UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERRY BALL,                      Case No. 1:09-cv-684

    Plaintiff,                     Beckwith, J.
                                          Wehrman, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 381-391) (ALJ's decision)).

**I.**

Plaintiff filed applications for benefits on November 13, 2003, alleging disability commencing October 20, 2002, due to back and leg pain, hand pain, and depression and anxiety. (Tr. 53-55, 296-300). His applications were denied initially and on reconsideration.

Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

at which Plaintiff was represented by counsel, was held on December 7, 2005. (Tr. 516-568). ALJ York issued an unfavorable decision on April 28, 2006. (Tr. 13-25). The Appeals Council denied review and Plaintiff timely appealed to this Court. On September 10, 2008, Judge Beckwith remanded the claim for additional proceedings. (Tr. 393-406).

A supplemental remand hearing was held on March 11, 2009, at which Plaintiff and vocational expert Michael Daoud testified. On May 19, 2009, ALJ Robert Flynn issued a decision denying Plaintiff's claim. (Tr. 378-91). The Appeals Council denied review on August 5, 2009; therefore, the ALJ's decision stands as Defendant's final determination. (Tr. 372-74).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since October, 20, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine, obesity, adjustment disorder with depression and anxiety, chronic pain syndrome, and history of poly substance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that

2

>    the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitation. The claimant is limited to work involving simple, routine, repetitive tasks in a low stress environment, which is defined as free of fast-paced production requirements, involving only simple, work-related decision, with few, if any, workplace changes, no contact with the public and only occasional contact with co-workers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on June 2, 1964 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferrable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 1569, 404.1569a, 416.969 and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 383-390).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI benefits.

On appeal, Plaintiff maintains that: (1) the ALJ erred in failing to find that Plaintiff's impairments met or medically equaled Listing 1.04A; (2) the ALJ erred in finding Plaintiff capable of light work; and (3) the ALJ erred in formulating Plaintiff's mental RFC.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the

4

claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A. Remand Order

As noted above, this matter was initially remanded for additional proceedings. ALJ York's initial decision accepted the findings of Dr. Berg, a state agency psychologist, who examined Plaintiff on February 07, 2004. Dr. Berg found that Plaintiff presented with a moderate to severe degree of anxiety/depression and diminished stress tolerance. He diagnosed adjustment disorder with mixed anxiety and depressed mood and assigned a GAF of 53-55. (Tr. 213). For occupational restrictions, Dr. Berg felt that there would be moderate limitations in Plaintiff's ability to maintain attention and concentration; moderate-severe limitations in his ability to relate adequately with others; moderate limitations in his ability to sustain his level of activity in a work setting due to anxiety, depression and reduced stress tolerance; and moderate-severe limitations in his ability to cope with routine job stress. (Tr. 214).

In response to hypothetical questions reflecting Dr. Berg's opinion that plaintiff presented with moderate to severe limitations in social interaction, and in dealing with routine job stress, the vocational expert testified that such limitations would preclude an individual from performing any work. The ALJ apparently rejected this testimony, but failed to provide any explanation for doing so. Thus, on appeal, the Court remanded this matter for further proceedings in order for the ALJ to explain her reasons for rejecting the vocational expert's testimony that was favorable to Plaintiff.

The remand order also specifically noted that the vocational expert's testimony that Plaintiff's moderate limitations in social functioning and stress tolerance preclude

him from working is not dispositive given that the ALJ's additional low-stress limitation in the hypothetical may adequately characterize and account for these impairments. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (holding that ALJ's decision denying benefits was supported by substantial evidence, even though vocational expert testified that PRTF finding that he often suffered deficiencies in concentration, persistence, or pace might make it impossible for him to perform identified jobs, where ALJ's hypothetical translated deficiencies into concrete job restrictions against quotas, complexity, and stress).

### B.  Consideration of Plaintiff's Mental RFC

A claimant's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at * 1 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims).

In formulating Plaintiff's mental RFC, ALJ Flynn again gave significant weight to Dr. Berg's assessment.  (Tr. 388).  In light of Dr. Berg's findings, the ALJ's mental RFC assessment limited Plaintiff to work involving simple, routine, repetitive tasks in a low stress environment, which is defined as free of fast-paced production requirements, involving only simple, work-related decision, with few, if any, workplace changes, no contact with the public and only occasional contact with co-workers.  Plaintiff, however, argues that the ALJ's RFC assessment improperly failed to include Dr. Berg's limitations concerning his ability to persist at work, concentrate on work tasks, or sustain work.

7

(Doc. 12).

Here, the ALJ noted that Plaintiff has a poor record of seeking treatment with mental health care providers despite serious complaints of mental health issues and multiple allegations of suicide attempts. Furthermore, Plaintiff reported to Dr. Berg that he did not see that counseling would be of much benefit since his primary problem was severe pain. Nonetheless, relying on Dr. Berg's assessment, the ALJ also concluded that Plaintiff has moderate deficits in concentration, persistence and/or pace, yet he did not include those restrictions in his RFC assessment. (Tr. 385). The ALJ found that restricting Plaintiff to simple, routine, and repetitive tasks was an adequate proxy for those limitations. In his decision, the ALJ stated:

> Because the low-stress limitation, as more fully articulated herein, took into account claimant's moderate limitations in social functioning and stress tolerance, the undersigned rejects that portion of the prior vocational expert's testimony that indicated claimant was disabled from a significant number of jobs. Rather, the undersigned relies on the remainder of the vocational expert testimony, as well as the more recent testimony of the vocational expert at the current hearing, who testified in response to the updated and clarified residual functional capacity.

(Tr. 390).

However, the ALJ's RFC assessment limiting Plaintiff to low stress work may not adequately account for Plaintiff's moderate limitations in maintaining attention, concentration and sustaining work activity, and severe limitations in coping with routine job stress.

Notably, if the ALJ's RFC assessment did not accurately portray Plaintiff's mental

8

impairments, the vocational expert's testimony in response to the ALJ's hypothetical questions, premised on such RFC, does not provide substantial evidence that Plaintiff could perform limited light work. *White v. Commissioner of Social Sec.*, 312 Fed. Appx. 779, 2009 WL 454916 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments).

After the ALJ issued his decision, the Sixth Circuit held that a hypothetical limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *See also Renn v. Commissioner of Social Sec.*, Case No. 1:09-cv-319, 2010 WL 3365944 (S.D. Ohio August 24, 2010)(J. Beckwith) (Because the ALJ's hypothetical failed to include Plaintiff's moderate deficits in memory, attention, and concentration, the vocational expert's testimony does not constitute substantial evidence that Plaintiff can perform her past relevant work)*; Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established

limitations where claimant has moderate deficiencies in concentration, persistence or pace).

Furthermore, the Court in *Ealy* also distinguished *Smith,* 307 F.3d at 379, *supra* at p. 7, wherein the Court upheld the ALJ's failure to include a concentration impairment in a hypothetical to the VE.  The ALJ in *Smith* found that four of five physicians correctly assessed the claimant with minimal or negligible concentration problems, while the fifth's determination that the claimant suffered "an inability to concentrate" was not credible. *Ealy*, 584 F.3d at 517.  Because of this finding, the ALJ did not include a concentration impairment in its hypothetical, and the hypothetical accurately portrayed the claimant's limitations.  *Id.*

In this case, however, the evidence of record does not contain additional inconsistent assessments as in *Smith*.  Notably, reviewing consultants Dr. Bonnie Katz and Dr. John S. Waddell completed a psychiatric review technique form ("PRTF") in which they concluded that Plaintiff has adjustment disorder with mixed anxiety and depressed mood (with anger and agitation).  (Tr. 224).  In rating Plaintiff's functional limitations, Drs. Katz and Waddell also found, *inter alia*, that he has moderate limitations in maintaining social functioning, maintaining concentration, persistence, or pace, and interacting with coworkers and the general public.  (Tr. 231, 234-35).

Here, as in *Ealy*, the ALJ stated that he relied primarily upon Dr. Berg's assessment, and the yet the ALJ did not include the moderate restrictions relating to Plaintiff's ability persist at work, concentrate on work tasks, or sustain work in his RFC assessment, nor include such limitations in his controlling hypothetical question to the

10

vocational expert. Thus, the ALJ's mental RFC assessment and his hypothetical questions to the vocational expert, based on such RFC assessment, did not accurately accommodate Plaintiff's impairments and limitations. As such, the vocational expert's conclusion that Plaintiff could perform a significant number of jobs does not serve as substantial evidence that Plaintiff could perform this work.

Accordingly, as more fully explained below, the appropriate remedy for the ALJ's error is to remand the case for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g), as the evidence of Plaintiff's disability is far from clear. *Ealy*, 594 F.3d at 517; *Pasco v. Commissioner of Soc. Sec.*, 137 Fed. Appx. 828, 845 (6th Cir. 2005).

### C. Consideration of Plaintiff's Physical Impairments

Plaintiff further argues that the ALJ erred in failing to find that Plaintiff met the requirements of Listing 1.04A based upon the findings of Dr. Siegel. Plaintiff also asserts that the ALJ improperly found him capable of performing light work, arguing that the majority of the post-remand evidence proves that Plaintiff could not do the standing and walking required by light work.

With respect to Plaintiff's physical impairments, the records reflects:

A September 28, 2002 MRI of the lumbosacral spine was essentially normal. (Tr. 145). On October 31, 2002, Plaintiff had no difficulty walking. (Tr. 146).

On April 7, 2003, Plaintiff was seen by Dr. Zaacks after falling at work. (Tr. 184). Dr. Zaacks found no motor or sensory loss. (Tr. 184).

X-rays of the cervical spine x-rays performed on January 20, 2004 were normal. (Tr. 193).

Plaintiff was examined by Dr. Aina on January 24, 2004.  (Tr. 203).  At that time, Plaintiff had a normal gait, he could arise from a chair, he could get on and off the examining table without difficulty, he walked on his heels and toes, and he could squat. (Tr. 204).  Dorsolumbar spine motion was limited, but lower extremity motion was normal.  (Tr. 208-09).  Dr. Aina reported that there were no reflex or sensory abnormalities, extremity strength was normal, and there was no atrophy.  (Tr. 205-07). Dr. Aina found Plaintiff could push/pull 30 pounds frequently and 20 pounds occasionally, but that prolonged standing and sitting may be affected (Tr. 205).

Dr. R. Whitten examined Plaintiff on August 25, 2004.  (Tr. 243-46).  Plaintiff had difficulty with forward flexion, but he arose from a seated position.  (Tr. 244).  Plaintiff had a normal gait and that lumbar motion was reduced.  (Tr. 244-45).  Dr. Whitten also found no sensory or reflex deficits in the lower extremities, and no strength deficits or atrophy.  (Tr. 245).

A September 20, 2004 MRI of the lumbar spine showed mild degenerative disc changes with no nerve root compression.  (Tr. 249).

Dr. J. Sorger examined Plaintiff on October 14, 2004, and he found full back and lower extremity motion, and good strength, reflexes and sensation.  (Tr. 254).

Dr. K. Gronbach examined Plaintiff on October 3, 2005.  ( Tr. 266).  Back motion was reduced, bilateral straight leg rasing was normal, and strength and reflexes in the extremities were normal.  (Tr. 267).

Post remand, Dr. B. Siegel examined Plaintiff on March 3, 2009, at the request of

Plaintiff's counsel. (Tr. 508). Dr. Siegel reported that Plaintiff was cooperative and walked with a cane. (Tr. 509). He further noted that Plaintiff's lumbar motion was reduced, there was a slight strength deficit in the right foot, and essentially no atrophy in the calves. (Tr. 510). Reflexes in the lower extremities were reduced, there was abnormal sensation in the right thigh, and bilateral straight leg raising was reduced. (Tr. 510). Dr. Siegel concluded that Plaintiff was totally and permanently disabled. (Tr. 510).

Based upon the evidence of record, the ALJ gave significant weight to Dr. Aina's assessment and found that Plaintiff could perform a reduced range of light work.[2] In making this finding, the ALJ explained that he reasonably gave Dr. Siegel's opinion little weight because it was not supported by medically acceptable clinical examinations and diagnostic testing, and it was inconsistent with other substantial evidence in the record, including Plaintiff's own description of activities of daily living which showed substantial greater amounts of walking, standing, sitting and lifting. (Tr. 388).

The ALJ's decision in this regard is substantially supported. The clinical findings in the record did not support Dr. Siegel's opinion. Dr. Siegel noted that Plaintiff walked with a cane, yet all other examinations showed Plaintiff had no difficulty walking, he could heel and toe walk, he got on and off the examination table with no problem, and he arose from a seated position and a squat without any problem. (Tr. 146, 204, 244-45,

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§404.1567(b) (*re*:DIB), 416.967(b) (*re*: SSI). Social Security regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

13

509). The record further indicates that motion of Plaintiff's lumbar spine ranged from normal to reduced, and he had full range of motion in his lower extremities. (Tr. 208-09, 245, 254, 267, 510). Furthermore, Plaintiff's bilateral straight leg raising ranged from normal to reduced. (Tr. 267, 504-06, 510). Plaintiff's reflexes, sensation and strength in the lower extremities were at most times normal, and there was never any evidence of significant atrophy in the extremities. (Tr. 184, 205-07, 245, 254, 267, 509-10).

Thus, as found by the ALJ, the diagnostic and clinical medical evidence does not support Dr. Siegel's opinion. Where a physician's conclusions regarding a claimant's capacity contain no substantiating medical data or other evidence, the ALJ is not required to credit such opinions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The ALJ considered the record evidence, including the opinion of Dr. Siegel, and reasonably concluded Plaintiff had the physical RFC to perform a reduced range of light work.

Plaintiff's assertion that the record supports a finding that Plaintiff's impairments meet the requirements of Listing 1.04A also lacks merit. Section 1.04A of the Listings requires:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if

>             there is involvement of the lower back, positive straight-leg raising
>             test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A (italics in original).

To meet a Listing, a claimant must meet all of the Listing's elements. 20 C.F.R. § 404.1525(d); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

According to Plaintiff, Dr. Siegel reported multiple signs of nerve root compression, including diminished reflexes, atrophy, dysthesia, 4/5 weakness and loss of motion, therefore meeting the requirements of listing 1.04A. (Tr. 510). Plaintiff further argues that the ALJ failed to provide sufficient analysis concerning the Listing.

Here, the ALJ explicitly stated, "[w]ith respect to the claimant's low back, he does not have consistent evidence of compromise of the nerve root or the spinal cord as required under listing 1.04 describing disorders of the spine." (Tr. 385). As detailed above, the medical evidence of record does not show that Plaintiff satisfied all of the Listing criteria. Moreover, the diagnostic findings did not support Dr. Siegel's extreme limitations.

Notably, the evidence reveals that Plaintiff has a spine disorder as indicated by a MRI of the lumbar spine showing mild degenerative disc changes. (Tr. 249). However, the medical evidence does not show that Plaintiff satisfied all of the Listing criteria. Plaintiff showed some limitation of motion of the spine, and there was reduced straight leg raising. (Tr. 208-09, 245, 254, 267, 510). One examination showed very slight weakness in the right foot, however, there was no other muscle weakness in the lower

15

extremities, or motor loss, and there was no evidence of atrophy. (Tr. 184, 205-07, 245, 254, 267, 510). Another examination revealed decreased reflexes in the lower extremities and abnormal sensation in the right thigh, but all other examinations showed no sensory or reflex deficits. (Tr. 184, 205-07, 245, 254, 267, 510).

Thus, as noted by the Commissioner, given the lack of significant muscle weakness and no atrophy in the lower extremities, and lack of significant sensory and reflex deficits in the lower extremities for a twelve month period, Plaintiff's condition does not meet or equal the requirements of Listing 1.04A.

Accordingly, contrary to Plaintiff's assertion, the ALJ's explanation for his decision concerning the Listing 1.04A is adequate for purposes of appellate review. More importantly, the ALJ's finding that Plaintiff did not meet the Listing is supported by substantial evidence.

### III.

"If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). Otherwise, the court should remand to the Commissioner for further consideration.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further

fact-finding is necessary.  *Id.* at 174.  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place."  *Id.* at 175.

Although the ALJ did not provide substantial evidence to support his conclusions, the undersigned does not find compelling evidence that Plaintiff is entitled to benefits.  According, this matter should be remanded for further consideration.

It is therefore **RECOMMENDED** that the ALJ's non-disability finding be **REVERSED,** and this matter **REMANDED** to the ALJ under the **FOURTH SENTENCE** of 42 U.S.C. §405(g).  The undersigned **FURTHER RECOMMENDS** that, on remand, the ALJ be instructed to: (1) obtain testimony and evaluation from a medical expert in order to reevaluate Plaintiff's mental impairments; (2) provide an accurate mental RFC assessment; and (3) properly formulate hypothetical questions to the vocational expert that accurately portray Plaintiff's mental impairments and limitations.

**IT IS SO RECOMMENDED.**

Date:   September 3, 2010                                                  s/ J. Gregory Wehrman
                                                                                 J. Gregory Wehrman
                                                                                 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERRY BALL,                                             Case No. 1:09-cv-684

    Plaintiff,                                        Beckwith, J.
                                                              Wehrman, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

      Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy

thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).